PUBLISHED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

IN RE LAMBERT OIL
COMPANY, INC.,

        Debtor.

_____

| | | |
|---|---|---|
| **NICK J. LAMBERT**, | ) | |
| | ) | Case No. 1:06CV00046 |
|    Appellant and Cross-Appellee, | ) | Case No. 1:06CV00047 |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| **WILLIAM E. CALLAHAN, JR.,** | ) | |
| **TRUSTEE,** | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
|    Appellee and Cross-Appellant. | ) | |
| | ) | |

*Wyatt B. Durrette, Jr., and John C. Smith, DurretteBradshaw PLC, Richmond, Virginia, for Appellant and Cross-Appellee; William E. Callahan, Jr., LeClair Ryan Flippin Densmore, Roanoke, Virginia, for Appellee and Cross-Appellant.*

The three issues in these related bankruptcy appeals are whether the bankruptcy court erred (1) in its method of calculating prejudgment interest in a judgment against a debtor of the bankruptcy estate; (2) in allowing a setoff to the debtor of the bankruptcy estate on the basis of a post-petition foreclosure sale, and (3) in taking

judicial notice of certain facts. I find that the bankruptcy court was correct in awarding a setoff, but incorrectly calculated the prejudgment interest. I also find that the bankruptcy court's judicial notice of certain facts constituted harmless error. I will remand the matter to the bankruptcy court with an instruction to recalculate the prejudgment interest.

## I. BACKGROUND.

Lambert Oil Company, Inc. ("Lambert Oil") filed a petition under Chapter 11 of the Bankruptcy Code on March 24, 2003. The bankruptcy court converted the bankruptcy case to Chapter 7 on September 16, 2003. William E. Callahan, Jr., ("the Trustee") was appointed trustee. On March 23, 2005, the Trustee initiated an adversary proceeding against Nick J. Lambert ("Lambert"), the president and sole shareholder of Lambert Oil, to collect outstanding shareholder loans.

The bankruptcy court held a trial on November 30, 2005, and entered judgment in favor of the Trustee in the amount of $224,086.82 on February 3, 2006.[1]  Both

---

[1]  By order dated February 16, 2006, the bankruptcy court entered a revised opinion correcting minor errors.

-2-

parties have appealed this judgment.  The parties have briefed the issues and oral

argument was held on June  26, 2006.  The appeals are now ripe for decision.[2]


## II. FACTS.

Prior to bankruptcy, Lambert Oil was in the business of operating retail

convenience stores and selling gasoline and diesel fuel.  Lambert was the president,

sole shareholder, and director of Lambert Oil and often personally guaranteed or

pledged personal collateral to secure corporate debt of Lambert Oil.  On one occasion

relevant to the present appeals, Lambert granted a lien on real property ("the Lambert

Property") owned solely by him to the Highlands Union Bank ("the Bank") for the

purpose of securing a loan by the Bank to Lambert Oil.  After the commencement of

the bankruptcy case, the Lambert Property was sold and the net proceeds of the sale,

totaling $283,784.40, were paid to the Bank.  The Bank applied these proceeds to the

outstanding balance on the loan.

Lambert would also frequently borrow money from his company.  Lambert

used these loan proceeds for a variety of personal expenses.  For example, some of

the funds borrowed were used by Lambert to pay his ex-wife in satisfaction of his

---

[2]    This court has jurisdiction pursuant to 28 U.S.C.A. § 158(a) (West 1993 & Supp.
2006).

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 3 of 30   Pageid#: 491

liability for equitable distribution of marital property, to pay off personal loans, and to acquire personal investments. The sums were recorded in Lambert Oil's financial records in an account called "Account 2610." Lambert never paid Lambert Oil interest on these loans, although Lambert Oil's accounting books reflected interest income on these amounts at between five and seven percent. When Lambert Oil went into bankruptcy, some of these loans were still outstanding. Accordingly, the Trustee initiated the present adversary proceeding to recover the outstanding loan amounts.

Before trial, the parties stipulated most of the facts for the bankruptcy court to consider in order to render its decision. The parties agreed that, subject to resolution of three issues, Lambert owed Lambert Oil $307,371.54. The three issues to be decided by the bankruptcy court were (1) whether entries designated "Clark" charged to Account 2610, totaling $22,961.16, should be added to the agreed upon amount of Lambert's debt; (2) whether the court should impose prejudgment interest; and (3) whether Lambert was entitled to set off the $283,784.40 paid to the Bank from the sale of the Lambert Property pledged as collateral for the Bank's loan to Lambert Oil.

In its decision, the bankruptcy court first found that the $22,961.16 designated "Clark" in Account 2610 should be included as part of Lambert's debt. This ruling is not an issue on appeal. Next, the bankruptcy court held that prejudgment interest was appropriate in this case and should be awarded. The bankruptcy court reasoned

-4-

that Lambert was using Lambert Oil as a continuing source of personal funds, which allowed Lambert to avoid interest he would otherwise have to pay to a third-party lending institution. Despite Lambert's argument that prejudgment interest should be calculated based on the final principal amount awarded in the bankruptcy court's judgment and should not begin accruing until the date the Trustee made a demand for a turnover of funds, the bankruptcy court decided to award prejudgment interest calculated on the balance in Account 2610 at the end of each fiscal year beginning with the year in which Lambert Oil became insolvent and ending on the date the judgment was entered.

With respect to the interest rate to be applied in calculating the prejudgment interest, the bankruptcy court looked to Virginia law. At the time of the bankruptcy court's decision, Virginia law provided for an interest rate of six percent, but prior to a 2004 amendment it mandated a rate of nine percent. *See* 2004 Va. Acts ch. 646 (amending Va. Code Ann. § 6.1-330.54 (Supp. 2005)). The bankruptcy court concluded that it was appropriate to award prejudgment interest upon the respective June 30 year-end balances at the interest rate in effect on the immediately following July 1 of each year, and thus in most years the nine-percent rate was applied.

Lastly, the bankruptcy court held that Lambert had a right of setoff pursuant to 11 U.S.C.A. § 553 (West 2004 & Supp. 2006) in the amount of $283,784.40, which

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 5 of 30   Pageid#: 493

was the amount received by the Bank as a result of the post-petition foreclosure sale of the Lambert Property. The bankruptcy court found that Lambert had a right of setoff under Virginia law based on his statutory right of reimbursement. *See* Va. Code Ann. § 49-27 (2005). The bankruptcy court then analyzed the availability of this right under § 553, which requires that Lambert (1) hold a pre-petition claim against Lambert Oil; (2) owe a debt to Lambert Oil that arose pre-petition; (3) show that the obligations are mutual; and (4) prove that the obligations are valid and enforceable. *See* 11 U.S.C.A. § 553.

The bankruptcy court found that the setoff was available under § 553 because: (1) Lambert had a pre-petition claim against Lambert Oil because when he signed the loan guaranty, he immediately incurred a contingent liability to the Bank and gained a contingent claim against Lambert Oil in the event he paid on the guaranty; (2) Lambert owed a pre-petition debt to Lambert Oil as stipulated by the parties; (3) the obligations were mutual because Lambert Oil's claim asserted by the Trustee was against Lambert personally and Lambert's claim was held in his individual right and was against Lambert Oil; and (4) the obligations were valid and enforceable because (a) Lambert was not required to file a proof of claim to assert setoff as a defensive matter and (b) the setoff is not disallowed under§ 502(d) of the Bankruptcy Code. *See* 11 U.S.C.A. § 502(d) (West 2004). In finding that the setoff was not disallowed

under § 502(d), the bankruptcy court rejected the Trustee's fraudulent transfer argument on the ground that this was a new theory that had not been pled in the complaint.

Based on its rulings regarding prejudgment interest and Lambert's right of setoff, the bankruptcy court awarded the Trustee the sum of $224,086.82. Its calculation was as follows:

| | |
|---|---|
| Agreed amount owed: | $307,371.54 |
| Added Clark entries: | 22,961.16 |
| Less setoff: | (283,784.40) |
| | |
| Debt less interest: | $46,548.30 |

Prejudgment interest (on year-end loan balance amounts):

| | |
|---|---|
| 9% on $464,488.10 from 7/1/98 to 6/30/99 | 41,803.93 |
| 9% on $518,729.48 from 7/1/99 to 6/30/00 | 46,685.65 |
| 9% on $319,489.69 from 7/1/00 to 6/30/01 | 28,754.07 |
| 9% on $292,562.63 from 7/1/01 to 6/30/02 | 26,330.64 |
| 9% on $330,332.70 from 7/1/02 to 4/29/03 | 24,598.46 |
| 9% on $46,548.30 from 4/30/03 to 6/30/04 | 4,912.44 |
| 6% on $46,548.30 from 7/1/04 to 2/3/06 | 4,453.33 |
| | |
| | $177,538.52 |
| | |
| Total Amount Due: | $224,086.82. |

Lambert has appealed the judgment of the bankruptcy court, arguing that the prejudgment interest was improperly calculated. The Trustee has cross appealed,

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 7 of 30   Pageid#: 495

contending that Lambert did not have a right to set off the amount paid to the Bank from the sale of the Lambert Property and that the bankruptcy court improperly took judicial notice of certain facts. I find that there was error in the prejudgment interest calculation based on the use of the nine percent rate of interest for the years 1998 through 2003, but otherwise I will affirm the decision of the bankruptcy court.

III. ANALYSIS.

A district court reviews the factual finding of a bankruptcy court under a clearly erroneous standard. *See* Fed. R. Bankr. P. 8013. Accordingly, all factual findings of the bankruptcy court must be upheld unless after reviewing the record below, this court is "left with the definite and firm conviction that a mistake has been committed." *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948). In contrast, a district court must review a bankruptcy court's decisions of law de novo. *Resolution Trust Corp. v. Murray (In re Midway Partners)*, 995 F.2d 490, 493 (4th Cir. 1993).

A. PREJUDGMENT INTEREST AWARD.

The parties agree that Virginia law governs the award of prejudgment interest in this case. Virginia Code § 8.01-382, the pertinent statutory provision, provides that "[i]n any action at law or suit in equity . . . the judgment or decree of the court,

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 8 of 30   Pageid#: 496

may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va. Code Ann. § 8.01-382 (2000 & Supp. 2005). The purpose of prejudgment interest is "to compensate the plaintiff who has been without relief for an extended period of time." *Gill v. Rollins Protective Servs. Co.*, 836 F.2d 194, 198 (4th Cir. 1987). Whether prejudgment interest should be awarded under this Virginia statute is a matter within the sound discretion of the court. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999).

The bankruptcy court found here that prejudgment interest was appropriate, and awarded it on the year-end loan balance for each year beginning with the date of insolvency. Lambert takes issues with three aspects of this award: (1) the use of the year-end loan balances as a basis for the calculation, (2) the date upon which prejudgment interest began accruing, and (3) the interest rate applied for a portion of the calculations.

1. AMOUNT UPON WHICH INTEREST AWARD SHOULD BE CALCULATED.

Lambert argues, based on the statutory language that the court "may provide for interest *on any principal sum awarded, or any part thereof,*" Va. Code Ann. § 8.01-382 (emphasis added), that the bankruptcy court's discretion was limited to

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 9 of 30   Pageid#: 497

awarding prejudgment interest on the final principal sum awarded of $46,548.30, or some part thereof.

In support of his argument, Lambert relies on a dictionary definition of "award." *See* Black's Law Dictionary 1102 (7th ed. 1999) ("to grant by formal process or by judicial decree."). The Trustee responds that the purpose of the award of prejudgment interest is to compensate for actual damages incurred by the plaintiff, and that an award based on the year-end balances of Account 2610 better serves that aim. *See Dairyland Ins. Co. v. Douthat*, 449 S.E.2d 799, 801 (Va. 1994) (recognizing "the principle that 'prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered'") (quoting *Monessen Sw. Ry. v. Morgan*, 486 U.S. 330, 335 (1988)). The Trustee also argues that the bankruptcy court did not err because any award of prejudgment interest is within the discretion of the court. *See Gill*, 836 F.2d at 198-99; *Shepard v. Capitol Foundry of Va., Inc.*, 554 S.E.2d 72, 76 (Va. 2001); *Marks v. Sanzo*, 345 S.E.2d 263, 276 (Va. 1986).

A review of case law reveals that courts applying section 8.01-382 normally award prejudgment interest on the principal sum of money established by the final judgment. *See, e.g., Gill*, 836 F.2d at 195 (upholding verdict of $244,238.17 and prejudgment interest based thereon); *Shepard*, 554 S.E.2d at 74 (upholding verdict

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 10 of 30   Pageid#: 498

of $1,700,000 along with prejudgment interest upon that award); *Dairyland*, 449 S.E.2d at 800 (upholding prejudgment interest based on $95,000 awarded by the jury). Nonetheless, the validity of awarding prejudgment interest on an alternative amount was not in issue in any of these cases. Furthermore, section 8.01-382 does not state that the court may provide for prejudgment interest on any principal sum awarded *by or in the judgment*, but merely states that it may be provided "on any principal sum awarded" without further explanation. Because the purpose of the prejudgment interest statute is to fully compensate the plaintiff and the award of prejudgment interest is within the sound discretion of the court, I uphold the bankruptcy court's method of awarding interest based on the year-end balances.

### 2. TIME AT WHICH PREJUDGMENT INTEREST SHOULD BEGIN.

Lambert next argues that the bankruptcy court erred when it held that prejudgment interest would begin to run on the date of insolvency. Lambert contents that because the loans to Lambert were demand loans and there is technically no default on a demand loan until demand is made, prejudgment interest in this case cannot begin before March 23, 2005, when the present adversary proceeding was filed. I find this argument to be without merit.

It is clear from section 8.01-382 that fixing the date from which any prejudgment interest shall run is within the discretion of the fact finder. *See* Va. Code

-11-

Ann. § 8.01-382 (stating that the fact finder "may provide for interest on any principal sum awarded, or any part thereof, *and fix the period at which the interest shall commence*") (emphasis added); *see also Skretvedt v. Kouri*, 445 S.E.2d 481, 487 (1994). Case law applying section 8.01-382 frequently begins the clock on prejudgment interest on the date that the principal amounts became due and payable. *See, e.g., Morris Law Office, PC v. Tatum*, 388 F. Supp. 2d 689, 694 (W.D. Va. 2005) (awarding prejudgment interest from date plaintiff's bill was due); *Marks*, 345 S.E.2d at 267 (awarding prejudgment interest "from the time each . . . monthly installment [of death benefits] was due and payable"). But given the unique facts of this case, the time of demand is not an accurate benchmark of when these loan amounts were due. Lambert Oil's injury from Lambert's failure to repay began much earlier than the date the Trustee filed the complaint.

As explained by the bankruptcy court, the time of insolvency, rather than the time of demand, is the appropriate time to begin prejudgment interest in this case because (1) Lambert, as president and sole shareholder, was in complete control of whether or not Lambert Oil made any demand; (2) Lambert Oil was recording interest from Lambert's loans as taxable income all along, and if Lambert were now relieved of paying that interest, a substantial reason that Lambert Oil had for not demanding payment would be removed; (3) the recorded interest income on the loans to Lambert

-12-

favorably affected Lambert Oil's balance sheet and thus its credit-worthiness, which was clearly a benefit to Lambert as sole shareholder; and (4) during its insolvency, Lambert Oil was paying interest on bank loans at an interest rate higher than the judgment rate of interest and thus it suffered a substantial loss by lending money to Lambert. Based on this rationale, it cannot be said that the bankruptcy court abused its discretion when it decided to start the clock on prejudgment interest at the time of insolvency.

    3. INTEREST RATE APPLICABLE TO PREJUDGMENT INTEREST AWARD.

Finally, Lambert argues that part of the prejudgment interest was calculated using an incorrect interest rate. The bankruptcy court awarded prejudgment interest upon the respective June 30 year-end balances at the interest rate in effect at the time. Lambert argues that the court should have applied the interest rate in effect on the date judgment was entered. I agree with Lambert and reverse the bankruptcy court on this issue.

The Virginia Supreme Court has held that although the fact finder has discretion to fix interest rates for awards of prejudgment interest, that discretion is limited by any legislatively imposed statutory cap. *See J.W. Creech, Inc. v. Norfolk Air Conditioning Corp.*, 377 S.E.2d 605, 609 (Va. 1989). Specifically, the rate of

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 13 of 30   Pageid#: 501

interest for awards of prejudgment interest under section 8.01-382 is limited by the statutory cap on judgment interest rates found in section 6.1-330.54. *See id.* at 609.

Section 6.1-330.54 was amended in 2004 to change the interest rate cap from nine to six percent, effective on July 1, 2004. 2004 Va. Acts ch. 646. This section was again amended in 2005, effective July 1, 2005, to provide that "[t]he rate of interest for a judgment shall be the judgment rate of interest in effect at the time of entry of the judgment and shall not be affected by any subsequent changes to the rate of interest stated in this section." 2005 Va. Acts ch. 455. Based on the language added in the 2005 amendment, Lambert argues that the bankruptcy court erred in applying the former nine-percent rate for the years 1998 through 2003.[3]

I agree with Lambert that the language of § 6.1-330.54 demands that a court awarding prejudgment interest use an interest rate equal to or lesser than the rate cap in effect on the date judgment is entered. Indeed, a judge of this court has interpreted the 2005 amendment precisely as Lambert suggests, albeit without any discussion of the issue. See *Morris Law Office*, 388 F. Supp. 2d at 694 (computing prejudgment interest for entire period from January 23, 2003, to February 3, 2005, using six-percent interest rate in effect at the time judgment was entered, rather than computing

---

[3] While prejudgment interest was hotly contested below, the parties did not argue the specific rate to be applied and thus Lambert did not expressly object to a nine percent rate. However, the Trustee does not contend that Lambert's argument has been defaulted.

-14-

interest for period from January 23, 2003, to June 30, 2004, using interest rate of nine percent and computing interest for period from July 1, 2004, to February 3, 2005, using interest rate of six percent). Accordingly, I reverse the bankruptcy court on this issue and remand with instructions to recalculate the prejudgment interest award by applying the six-percent rate to all year-end balances.[4]

## B. LAMBERT'S RIGHT TO SETOFF.

The bankruptcy court allowed Lambert a setoff $283,784.40 against his debt owed to Lambert Oil, reflecting the amount paid to the Bank as a result of the sale of the Lambert Property. The Trustee appeals this decision, supplying three arguments as to why it was error. Specifically, the Trustee contends that (1) mutuality of obligation is lacking, (2) setoff is inequitable on the facts of this case, and (3) § 502(d) of the Bankruptcy Code precludes the setoff at issue.

---

[4] The Trustee argues that in spite of the amendment to section 6.1-330.54, in effect at the time of the entry of judgment in this case, he had a vested right in his claim to a nine percent interest rate that could not be taken from him by subsequent legislation. However, I find the allowable interest rate to be a matter of procedure, governed by the law in effect at the time of the judgment. *See Sargent Elec. Co. v. Woodall*, 323 S.E.2d 102, 102 (Va. 1984) ("A legislative enactment, if purely procedural in nature, may be given retroactive effect . . . .).

## 1. MUTUALITY.

The Trustee argues that mutuality of obligation is lacking and thus that a right of setoff is not available under 11 U.S.C.A. § 553. Section 553 provides, in pertinent part:

> (a) Except as otherwise provided in this section . . . this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of [the bankruptcy case] against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that–
>
> (1) the claim of such creditor against the debtor is disallowed . . . .

11 U.S.C.A. § 553. Section 553 does not create a right of setoff, but rather merely recognizes and preserves setoff rights that exist under other applicable law, and then only to the extent that the requirements of § 553 have been satisfied. *See* 5 Collier on Bankruptcy ¶ 553.01[2] (15th ed. rev. 2006). The mutuality requirement of § 553 is not defined in the Bankruptcy Code, but case law indicates that in order for claims to be mutual, the debts must be in the same right and between the same parties standing in the same capacity. *Id.* ¶ 553.03[3][a] (15th ed. rev. 2004).

In this case, Lambert asserted that his right to setoff was based on Va. Code § 49-27, which provides a surety's remedies against the principal for money paid by the surety. Section 49-27 provides:

-16-

If any person liable as bail, surety, guarantor or endorser . . . pay, in whole or in part, such note, bond or other demand, . . . the person having a right of action for the amount so paid may, by motion in the court in which the judgment, decree or execution was rendered or awarded, obtain a judgment or decree against any person against whom such right of action exists for the amount so paid, with interest from the time of payment, and five per centum damages on such amount. The person so paying, in whole or in part, any such judgment, decree or execution rendered or awarded on account of such liability, or any such note, bond or other demand, shall, by operation of law, in addition to the remedy above provided, be substituted to and become the owner of all of the rights and remedies of the creditor for the enforcement and collection of the amount or amounts so paid, and shall be deemed the assignee thereof. Executions, or other legal process to which the principal creditor was entitled, may be issued on any such judgment or decree in the name of the original creditor against the person primarily liable for the benefit of the person secondarily liable to the extent to which he has satisfied the original creditor.

Va. Code Ann. § 49-27.

The bankruptcy court found that § 49-27 provided Lambert with two remedies against Lambert Oil: (1) subrogation to the rights of the Bank against Lambert Oil, and (2) a right to recover directly from Lambert Oil with interest from the time of payment. The bankruptcy court held that Lambert's right of subrogation under Virginia law could not serve as the basis for a right of setoff under § 553, however, because this right of subrogation was subordinated to the rights of the Bank by operation of § 509(c) and thus fails to meet § 553's mutuality requirement.

-17-

Section 509 deals with a co-debtor's right of subrogation for its property transferred to a third party creditor and for which the bankruptcy debtor was primarily liable. As a general matter, this section recognizes the right of subrogation of the co-debtor to the creditor's rights against the primarily liable debtor, but subsection (c) provides that such right of subrogation is subordinate to the rights of the creditor against the bankruptcy debtor "until such creditor's claim is paid in full." 11 U.S.C. § 509(c). Because the sale of the Lambert Property only satisfied part of the loan from the Bank to Lambert Oil, the bankruptcy court concluded that Lambert's claim of subrogation was subordinate to the Bank's claim and that therefore Lambert's claim lacked mutuality with the claim Lambert Oil asserted against him.

The bankruptcy court found that this did not end the inquiry of whether setoff was available, however, because Lambert also had a direct right to payment under Virginia law. Under Virginia law, "[a] partial payment is sufficient to establish the surety's right against the principal debtor. It is only the creditor who can insist that the debt shall be paid in full." *Morton v. Dillon*, 19 S.E. 654, 656 (Va. 1894). The bankruptcy court noted that the right to setoff has been allowed on the basis of a claim for indemnification. Courts have reasoned that "[t]o say . . . that a surety is not entitled to share in the dividends of the estate until the principal creditor receives full payment of his claim is different from saying that the surety is not entitled to use his

-18-

claim against the bankrupt for the limited purpose of setting it off against his own debt to the bankrupt." *Hayden v. Standard Accident Ins. Co.*, 316 F.2d 598, 602 (9th Cir. 1963). The bankruptcy court concluded that this right of reimbursement served as a basis for setoff under § 553 because all of the § 553 requirements, including mutuality, are met.

The Trustee argues that the bankruptcy court erred in determining that Lambert's reimbursement right satisfied the mutuality requirement of § 553 because this claim of reimbursement is subordinated by § 509(c) just the same as his claim of subrogation was subordinated. In support of this argument, the Trustee emphasizes the language of 509(c), which states that "[t]he court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, *or for reimbursement or contribution*, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise." 11 U.S.C.A. § 509(c) (emphasis added). In his reply, Lambert first argues that § 509 is inapplicable in this case because he asserts a right of subrogation only under Virginia Code 49-27, and not under § 509. Lambert also contends that even if the court finds that § 509 would apply to Lamberts claim, § 553 trumps it. Lastly,

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 19 of 30   Pageid#: 507

Lambert argues that even if his claim were subordinated by § 509(c), the priority of a claim is irrelevant under § 553 and subordinated claims are eligible for setoff.

I agree with Lambert and find that § 509(c) does not destroy mutuality under § 553. While the language of § 509(c) does seem to apply to claims for reimbursement as well as to claims of subrogation, thereby arguably subordinating Lambert's reimbursement claim to that of other creditors, relevant authority indicates that subordinated claims are eligible for setoff. Indeed, a leading bankruptcy treatise, when analyzing the mutuality requirement of § 553, states that '[i]n general, the priority of a claim is irrelevant under section 553, and subordinated claims are eligible for setoff notwithstanding the subordination." 5 Collier on Bankruptcy ¶ 553.03[3][e][vi] (15th ed. rev. 2004) (citing *Rochelle v. United States*, 521 F.2d 844, 855 (5th Cir. 1975); *Hayden*, 316 F.2d at 601; *Allegaert v. Perot*, 466 F. Supp. 516, 519 (S.D.N.Y. 1978); *Defense Servs., Inc. v. United States (In re Defense Servs., Inc.)*, 104 B.R. 481, 485-86 (Bankr. S.D. Fla. 1989); *In re Metro. Hosp.*, 110 B.R. 731, 739-42 (Bankr. E.D. Pa. 1990), *aff'd*, 131 B.R. 283 (E.D. Pa. 1991); *Texas Bank & Trust v. United States (In re Sound Emporium, Inc.)*, 70 B.R. 22, 24 (W.D. Tex. 1987)).

The treatise and the Trustee cite authority that could stand for the proposition that subordinated claims lack mutuality and cannot be setoff under § 553. *See, e.g.,*

-20-

*Northwest Racquet Swim & Health Clubs, Inc. v. Resolution Trust Corp.*, 927 F.2d 355, 363 (8th Cir. 1991); *FDIC v. Texarkana Nat'l Bank*, 874 F.2d 264, 269 (5th Cir. 1989); *FDIC v. Bank of Am. Nat'l Trust & Sav. Assn.*, 701 F.2d 831, 836-39 (9th Cir. 1983); *FDIC v. De Jesus Velez*, 678 F.2d 371, 376 (1st Cir. 1982); *Marta Group, Inc. v. Country Appliance Co.*, 79 B.R. 200, 204 (E.D. Pa. 1987). However, I find it significant that in each of these cases, the subordination is provided for by either state law or the agreements themselves, rather than by a Bankruptcy Code provision. In the instant case, where the arguable subordination of the claim for which Lambert wishes to assert a right of setoff is the product of a provision in the Bankruptcy Code rather than state law, it seems that the better course is to allow the setoff and thereby preserve the setoff right permitted by state law as envisioned by § 553. The Bankruptcy Court for the Southern District of New York provided an excellent rationale for this result when it stated:

> A setoff is, in effect, a congressionally and judicially sanctioned preference. Section 553, with certain exceptions, permits setoff where it is available under non-bankruptcy law. Since Congress explicitly set forth the exceptions to the right to set off mutual debts, the court would be remiss in engrafting onto the statute a new exception for the subordinated claim of a guarantor or surety in the absence of some policy in non-bankruptcy law which would require that result.

*Fisher v. The Outlet Company (In re Denby Stores, Inc.)*, 86 B.R. 768, 780-81 (Bankr. S.D.N.Y. 1988) (internal citations omitted). Therefore, I find that regardless

of whether § 509 would serve to subordinate Lambert's claim of reimbursement, such subordination would not destroy the mutuality requirement of § 553.[5]

The Trustee argues that mutuality is lacking for another reason. The Trustee contends that mutuality is lacking between the Trustee's claim and Lambert's claim because Lambert does not hold his claim in the same capacity as the Trustee's claim against him. The Trustee urges that because Lambert Oil was insolvent from June 30, 1998, until the filing of the petition, Lambert, as Lambert Oil's president and sole shareholder, was a fiduciary of Lambert Oil's creditors during that time. The Trustee contends that every transfer he seeks to recover from Lambert is a claim against Lambert in his capacity as a fiduciary, whereas the claim Lambert has against Lambert Oil is in his capacity as an individual. This argument also fails.

In the first place, the Trustee has not before this appeal claimed a breach of fiduciary duty. From the outset, the Trustee has asserted a claim against Lambert in his individual capacity to collect outstanding loans to Lambert. Absent exceptional circumstances, reviewing courts will not consider arguments raised for the first time on appeal, although they have the discretion to do so. *See Williams v. Prof'l Transp.*

---

[5] Although the bankruptcy court focused on § 509(c) in relation to Lambert's right to setoff based on a claim of subrogation and stated that subordination of this claim by § 509(c) destroyed mutuality, I find that this conclusion was erroneous unless the bankruptcy court intended to hold that the fact that Lambert's claim of subrogation was also subordinated by Virginia law mandated that result.

*Inc.*, 294 F.3d 607, 614 (4th Cir. 2002). Moreover, even if I permitted the Trustee to now argue that the debt was owed by Lambert in his capacity as a fiduciary, it seems that the basis of the judgment below would defeat this argument. "[C]ourts will prevent defendants charged with breaching a fiduciary duty from pleading set-off," but this is typically only when the "defendant's potential liability to the bankrupt [is] based solely on the breach of fiduciary duties." *Allegaert*, 466 F. Supp. at 518. Here, even if the Trustee had argued breach of fiduciary duty in the bankruptcy court, the Trustee ultimately recovered the debt from Lambert under § 542(b) in his individual capacity. Having proved liability based on something other than breach of fiduciary duty, the Trustee cannot now argue that the debts are not mutual because Lambert owed that money in his capacity as a fiduciary rather than as an individual. Thus, regardless of whether Lambert may have been liable for a breach of fiduciary duty, as asserted by the Trustee, the bottom line is that the Trustee chose to recover the debt from Lambert in his individual capacity and thus mutuality is present.

## 2. Equitable Considerations.

The Trustee next argues that even if mutuality is present and setoff is permitted under § 553, the bankruptcy court erred as a matter of law by failing to determine whether it was equitable for the court to permit the setoff. The right of setoff is not mandatory, but "lies within the equitable discretion of the trial court." *Kentucky*

-23-

*Cent. Ins. Co. v. United States (In re Labar Corp.)*, 177 F.3d 439, 477 (6th Cir. 1999) (quoting *In re Southern Indus. Banking Corp.,* 809 F.2d 329, 332 (6th Cir. 1987)). After a court determines that the prerequisites for setoff exist, it generally looks to the equities to determine if the setoff should be allowed. *See Gordon Sel-way, Inc. v. United States*, 270 F.3d 280, 292 (6th Cir. 2001). The Trustee argues that the bankruptcy court simply failed to make this determination before granting the setoff and therefore erred as a matter of law. This argument is without merit.

First, the review of a bankruptcy court's decision to allow setoff is under an abuse of discretion standard. *See, e.g., Kentucky Cent. Ins. Co.*, 177 F.3d at 447. Accordingly, this court should "only overturn the decision of the lower court 'when there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of all the relevant factors.'" *Frederick Co. Nat'l Bank v. Lazerow*, 139 B.R. 802, 808 (D. Md. 1992) (quoting *Stephen Indus. Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986)). I cannot conclude that the bankruptcy court committed a "clear error of judgment" in allowing Lambert to offset his debt to Lambert Oil with a debt that Lambert Oil clearly owed to him, even if I might have found setoff inequitable because of the fact that Lambert was using Lambert Oil as a personal source of funds.

-24-

The Trustee argues that the bankruptcy court never considered the equities before permitting setoff and that this is the error of which he complains. However, although the bankruptcy court never explicitly engaged in a distinct analysis of the equities involved in allowing this particular setoff, it did consider those facts that affect the equities involved and ultimately determined that setoff was appropriate. For example, the bankruptcy court thoroughly considered the Trustee's arguments concerning the alleged impropriety of the loans to Lambert. As explained below, the bankruptcy court decided that it was not appropriate to allow the Trustee to pursue these arguments given the late stage at which they were injected into the case. The bankruptcy court also discussed the fairness of allowing Lambert to offset his debt, since Lambert Oil would be permitted to do the same against him. Additionally, the bankruptcy court awarded prejudgment interest, thereby alleviating any inequity perceived as a result of Lambert's position as president and sole shareholder.

Accordingly, I find that the bankruptcy court was within its discretion in allowing the setoff, particularly in light of the fact that there is "a strong federal policy towards allowing setoff, [and the court] is reluctant to disturb this policy unless compelling circumstances require it." *SEC v. Elliott*, 953 F.2d 1560, 1572 (11th Cir. 1992) (citing *Bohack Corp v. Borden, Inc.*, 599 F.2d 1160, 1169 (6th Cir. 1977)). Indeed, a leading bankruptcy treatise has indicated that, despite the fact that

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 25 of 30   Pageid#: 513

setoff arose from equitable principles, the current Bankruptcy Code provides a more fixed set of governing principles:

> The Bankruptcy Code provides no general equitable mechanism for disallowing rights of setoff that are expressly preserved by section 553. Consistent with the text of section 553, the best statement of modern law and practice is that, if the relevant claim and debt constitute mutual obligations within the meaning of section 553, a right of setoff should be recognized in bankruptcy unless the right is invalid in the first instance under applicable nonbankruptcy law, or unless it is otherwise proscribed by some express provision of the Code.

5 Collier on Bankruptcy ¶ 553.02[3] (15th ed. rev. 2004).

### 3. APPLICABILITY OF § 502(D).

In his third argument against setoff, the Trustee contends that 11 U.S.C.A. § 502(d) prevents it. This argument is based on the reasoning that § 553 provides that setoff is allowed "except to the extent that . . . the claim of such creditor against the debtor is disallowed" and § 502(d) provides in turn that

> [n]otwithstanding subsections (a) and (b) of this section, the court shall *disallow* any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C.A. § 502(d) (emphasis added).

-26-

This argument fails because the Trustee recovered the outstanding loan balance under § 542. Section 542(b) provides, in pertinent part, that

> an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee *except to the extent that such debt may be offset under section 553 of this title* against a claim against the debtor.

11 U.S.C.A. 542(b) (emphasis added). Therefore, because Lambert's debt can be offset to the extent of the amount paid to the Bank as a result of the sale of the Lambert Property, that amount is not "recoverable under § 542" within the meaning of § 502(d) and thus not disallowed thereby.

Despite the fact that the Trustee consistently sought recovery for Lambert's debt under the theory that it was a simple account debt, the Trustee attempted to assert a new fraudulent transfer theory just thirteen days before trial. This new theory arguably would have made the loans from Lambert Oil to Lambert "avoidable under section . . . 544 [and] 548" within the meaning of § 502(d). The bankruptcy court held that because up until that point the Trustee had alleged only an account debt, "the Trustee's cause of action is limited to the recovery of an account debt" and any arguments that deny the right to setoff when the Trustee has alleged a fraudulent transfer would not be considered. This decision should be analyzed under an abuse

Case 1:06-cv-00046-JPJ   Document 10   Filed 08/16/06   Page 27 of 30   Pageid#: 515

of discretion standard, and, because it appears equitable based on the relevant facts of this case, I cannot find that it was clear error.

The Trustee argues that he was simply asserting the fraudulent transfer theories defensively against Lambert's claim of setoff, but the use of such theory defensively must fail if the same theory is not the basis claimed for recovery. This is because the Trustee's loan recovery theory, the theory it pled and the theory it ultimately recovered under, is based on the same set of facts as his fraudulent conveyance theory, and the two theories are mutually exclusive. *See Barber v. Westbay (In re Integrated Agri, Inc.)*, 313 B.R. 419, 423 (Bankr. C.D. Ill. 2004) ("Although not expressly designated as such, the loan recovery count is necessarily brought in the alternative to the fraudulent transfer theory."). If the funds advanced to Lambert were truly loans that he was obligated to repay, then there was no fraudulent transfer. *See id*. The Trustee did not appeal the loan-recovery basis of the judgment entered by the bankruptcy court, and therefore he cannot now use a mutually inconsistent fraudulent transfer theory as a defense to Lambert's asserted right of setoff.[6]

---

[6] Lambert also argues that, even if the transfers were avoidable under § 544 or § 548, § 502(d) would still not prevent the setoff because (1) a court order is a prerequisite to the applicability of § 502(d) since its purpose is to ensure compliance with judicial orders; (2) even if a court order is not a prerequisite, Lambert must first be given a reasonable amount of time in which to turn over the amounts; and (3) there is a circular reference problem similar to that identified above with respect to § 542, albeit not as obvious. The argument that a court order is a prerequisite is without merit. *See* 4 Collier on Bankruptcy

## C. Judicial Notice.

In his final argument on appeal, the Trustee contends that the bankruptcy court erred in taking judicial notice of adjudicative facts contained in the claims filed by the Bank in the underlying bankruptcy case. Specifically, the Trustee takes issue with the bankruptcy court's statements throughout its opinion that Lambert was a guarantor of the Bank's loan when all that was stipulated was that Lambert "personally guaranteed and/or pledged personal collateral to secure corporate debt periodically throughout Debtor's existence" and that Lambert "granted a lien on real property . . . owned solely by him to [the Bank] to secure [the loan at issue in this case]." (Stip. ¶ 32 and 33). The Trustee admits that the bankruptcy court was within its authority when it took judicial notice of the facts that (1) Lambert Oil listed claims owed to the Bank on its schedules filed with the court, (2) the Bank filed proofs of claims in the bankruptcy case, and (3) Lambert did not file a proof of claim in the bankruptcy case.

---

¶ 502.05[2][a] (15th ed. rev. 2003) ("To assure the effectuation of the purpose of this section, a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer. But to prevent abuse of this section this initial disallowance should be made by judicial determination, whether it be obtained in a claim objection or by some form of a declaratory judgment action."); *but see Marketing Res. Int'l Corp. v. PTC Corp. (In re Marketing Res. Int'l Corp.*), 35 B.R. 353 (Bankr. E.D. Pa. 1984). The second and third arguments have some merit, but because I conclude that § 502(d) would not bar setoff in this case because the Trustee is precluded from arguing fraudulent transfer theories, I need not consider these contentions.

-29-

Federal Rule of Evidence 201, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9017, provides in relevant part:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b). Admittedly, that Lambert guaranteed the Bank's loan does not fit within the definition of a judicially noticed fact. Nonetheless, I find that any error here would be harmless. The Trustee states that "Lambert was a co-maker of the loan, but never signed a personal guaranty." (Cross App. Reply Br. at 7.) Substituting "co-maker" for each of the instances in which the bankruptcy court refers to Lambert's status as a guarantor of the loan would not alter the meaning or the legal correctness of the bankruptcy court's discussion.

IV. CONCLUSION.

For the foregoing reasons, I will affirm the bankruptcy court's decision except I will remand the case with an instruction to recalculate the prejudgment interest award  Appropriate final judgments will be entered.

DATED: August 16, 2006

/s/ JAMES P. JONES
Chief United States District Judge